UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHMOUD IDRIS,<br>Petitioner,<br>v.<br>WARDEN JEREMY CASEY, et al.,<br>Respondents. | Case No.: 26-CV-2494 JLS (SBC)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>(ECF No. 1) |

Presently before the Court is Petitioner Mahmoud Idris's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents' Response in Opposition to Petitioner's Habeas Petition ("Ret.," ECF No. 11) and Petitioner's Traverse ("Traverse," ECF No. 12). For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus.

**BACKGROUND**

Petitioner, a native and citizen of Sudan, has been detained by the Department of Homeland Security Immigration and Customs Enforcement at the Imperial Regional Detention Facility since October 1, 2025. Ret. at 1–2. Petitioner filed asylum applications for relief from withholding. *Id.* at 2. DHS filed a Motion to Pretermit the Petitioner's applications for relief because Petitioner is subject to the Asylum Cooperative Agreement ("ACA") with Uganda. *Id.* On January 8, 2026, an Immigration Judge ("IJ") denied

Petitioner's applications for relief, granted the Motion to Pretermit, and ordered Petitioner removed to Uganda. *Id.* On February 7, 2026, the appeal period expired for Petitioner and the Government to appeal the removal order to the Board of Immigration Appeals, making his final order of removal administratively final. *Id.* Petitioner's 90-day removal period expired on May 8, 2026. *Id.* Petitioner claims that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and the Due Process Clause of the Fifth Amendment. *See generally* Pet.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien is denied asylum, granted withholding of removal under 8 U.S.C. § 1231(b)(3), and ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal to a third country. *See* 28 U.S.C. § 1231(a)(2). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-

month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

"[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

Section 1231(a)(1)(B) states that:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The Court finds that Petitioner has satisfied his initial burden.[1] Petitioner argues that he has never been to Uganda, he has a credible fear of going to Uganda, he does not have any family ties to Uganda, Uganda has a recent history of not accepting non-citizens, he

---

[1] Respondents do not contest that the six-month presumptively reasonable period has passed. *See* Ret. at 4 (admitting that Petitioner's prolonged detention claim would ripen by August 6, 2026).

has been cooperative in facilitating his removal, and Respondents have not made any efforts to remove. Pet. at 4; Traverse at 3. Because Petitioner has shown good reason to believe he will not be removed in the reasonably foreseeable future, the burden now shifts to Respondents to rebut Petitioner's showing. *Zadvydas*, 533 at 701.

Respondents have not provided any evidence that DHS has done anything to facilitate Petitioner's removal beyond cancelling his asylum application and ordering his removal. *See generally* Ret. Respondents do not provide any evidence that Petitioner is likely to be removed to Uganda or that *anyone* has been removed to Uganda pursuant to the ACA. *See Grishchenko v. Noem*, No. 25-CV-3514-JES-JLB, 2025 WL 3675070, at *2 (S.D. Cal. Dec. 17, 2025) ("Respondents do not identify any potential countries which might accept Petitioner's third country removal, or any factors related to Petitioner or people like him which might make a future removal attempt successful when others have failed."); *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1110 (W.D. Wash. 2025) ("There is no evidence that the Government has taken any steps, before or since that date, to remove Petitioner to Uganda. There is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all.").

As Petitioner contends, Respondents "make zero—really zero—attempt to claim that they have taken any steps to facilitate [Petitioner's] removal." Traverse at 1. Respondents have not updated the Court with any progress on Petitioner's likelihood of removal, and they do not claim to have reached out to Uganda's consulate, nor have they provided any data as to Uganda's likelihood as a country of removal. *See generally* Ret. The Court concludes that Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of removal. Accordingly, the Court **GRANTS** the Petition.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody. The Parties are **ORDERED** to file a Joint Status Report by August 14, 2026, confirming that Petitioner has been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: August 11, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge